[Doc. No. 67]

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| **JEFFREY A. BRIDGES,** : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Civil No. 12-385 (JS) |
| : | |
| **MELISSA MORRIS, ET. AL,** : | |
| : | |
| Defendants. : | |
| _____: | |

## MEMORANDUM OPINION

This matter is before the Court on the "Motion for Summary Judgment" [Doc. No. 67] filed by defendant Cellco Partnership d/b/a Verizon Wireless ("Verizon"). The Court received the response in opposition from plaintiff Jeffrey A. Bridges ("Bridges") [Doc. No. 79] which is joined by defendant State Farm Insurance ("State Farm") [Doc. No. 81].[1] Verizon has also submitted a Reply. [Doc. No. 82]. The Court exercises its discretion to decide Verizon's motion without oral argument. See Fed. R. Civ. P. 78; L. Civ. R. 78.1. For the reasons to be discussed, Verizon's motion is GRANTED.

## BACKGROUND

The key facts germane to Verizon's motion are not in dispute. This action arises from an automobile accident on August 16, 2010,

---

[1] State Farm previously submitted its own motion for summary judgment [Doc. No. 68] as did Enterprise Rent-a-Car Company of Maryland, LCC [Doc. No. 71]. The Court denied these motions without prejudice in order for Verizon's motion to be decided first. See Orders of April 1, 2014 [Doc. Nos. 77, 78].

1

in which defendant Melissa Morris struck plaintiff's vehicle from behind on the New Jersey Turnpike. See Compl. ¶ 6. Defendant Morris was driving a vehicle owned by Verizon, her employer, but was not authorized to be operating the vehicle when the accident occurred. See Verizon's Statement of Uncontested Facts ¶ 22. At the time of the accident, Morris was an administrative assistant to Verizon Wireless' Networks Operations Director for the State of Georgia, Jim Blake. See Dep. of Jim Blake ("Blake Dep.") T5:13-6:17. As part of her job responsibilities out of her Alpharetta, Georgia office, Morris was a fleet coordinator for Verizon vehicles. See Dep. of Melissa Morris ("Morris Dep.") T6:19-25. In this role, Morris managed vehicle registrations and licensing, orders for new vehicles and periodically drove the Verizon vehicles to receive regular maintenance. Id. T6:23-7:11.

Of particular importance to this case is what steps a Verizon employee was required to take in order to sign out a "pool" or "pull" vehicle -- a standby vehicle within the fleet that was not assigned to any particular employee. According to the record, first an employee must be placed on an "Approved List," which required participation in an online tutorial, fulfillment of a defensive driving course, a valid driver's license, completion of an application which states that the employee has read the company's vehicle policies[2] and manager approval. Morris Dep. T32:6-33:20;

---

[2] Section 6.7 of this policy states:

2

Blake Dep. T10:8-17. Once placed on the approved list, an employee could sign out the vehicle with a third-party security officer in the fleet lot who controlled the keys and the security log. Morris Dep. T136:7-20. The security log contained a column for explaining the purpose of obtaining the vehicle. Id. T36:19-24. Morris testified that "some people didn't write anything" in this column and that sometimes she wrote "general" or left the space blank when signing out a vehicle. Id. T36:22-23, T147:24-148:1. Morris then presented these security logs to her supervisor but it is unclear whether these logs were reviewed and by whom. Id. T148:12-23.

On Friday, August 13, 2010, three days before the car accident involving plaintiff, Morris requested bereavement time from her supervisor, Jim Blake, to attend her grandmother's funeral in Connecticut. See Termination Form at 1. Though Morris originally requested to leave work at 3:30 p.m. that day, at 11:53 a.m. she emailed Blake to inform him that she had to leave for the airport at noon (7 minutes later) because her original flight was cancelled. See Email from Morris to Blake of Aug. 13, 2010.

---

> Personal Use of a Work Vehicle is only allowed when the use is incidental (see definitions above under "Incidental Use") to the job function for which the vehicle was assigned, or when the employee has been approved for an exception to this rule by obtaining an executed copy of Attachment D [a personal use application].

See Verizon Wireless Policy, Section 6.7. Additionally, when employees use pool vehicles for personal use they must record the mileage driven and reimburse the company accordingly. Id.

3

At some point that day, Morris instead took a Verizon pool vehicle and drove it to Connecticut. Morris Dep. T110:16-111:5. Three days later, on Monday, August 16, 2010, Blake received a voicemail[3] from Morris indicating that she had taken a Verizon vehicle and had been involved in a car accident on the New Jersey Turnpike. Morris Dep. T121:11-122:1. Later, when Blake asked Morris why she did not fly to Connecticut as she previously represented, Morris stated that she did not have enough money for her flight and did not use her personal vehicle because her insurance was cancelled. See Termination Form at 1-2. As a result of this incident, Morris was terminated from her employment and Verizon additionally pursued a criminal complaint against Morris for theft by conversion. Morris Dep. T63:14-23.

In his second amended complaint, plaintiff alleges Verizon is liable under respondeat superior and negligent entrustment

---

[3] The following is the transcript of this voicemail message as transcribed by the court reporter during Morris' deposition:

> Hi Jim. This is Melissa. I really do need to speak with you. I just wanted to let you know that I made a poor decision and I just wanted to (inaudible) permission to attend my grandmother's funeral.
>
> This morning at 1:24 a.m. I got in an accident on the New Jersey Turnpike trying to get back to Georgia. I was able to drive from there to Maryland. (Inaudible.) It's [sic] going to have the vehicle towed to a local dealership.
>
> They said that you need to fill out (inaudible) and they are forwarding over to me the incident report within the next hour, so I will go ahead and forward the information to you. I know that it's grounds for termination, so just let me know how I need to proceed. Thanks. Bye.

Morris Dep. T121:11-122:1.

theories, and was negligent in the "control of the [Verizon] vehicle[s]." See Second Am. Compl. ¶¶ 16-18 [Doc. No. 42]. Verizon contends that it is not liable under a respondeat superior or negligent entrustment theory, and should not be held to owe a duty to third parties for an employee's use of a company vehicle outside the scope of employment. See generally Def.'s Reply. Br.

**DISCUSSION**[4]

Pursuant to Fed. R. Civ. P. 56, summary judgment is appropriate where the court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any . . . demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). Summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The materiality of a fact turns on whether under the governing substantive law, a dispute over the fact might have an effect on the outcome of the suit. Id. The court must view all evidence and draw all reasonable

---

[4] As a preliminary matter, both plaintiff and Verizon agree that New Jersey law should apply. See Def. Br. at 10-13; Pl.'s Opp. Br. at 10 n.4. "A federal court sitting in diversity must apply the forum state's choice of law rules." Johansson v. Cent. Garden & Pet Co., 804 F. Supp. 2d 257, 262 (D.N.J. 2011) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). As explained in the parties' briefs, since the laws of the forum state, New Jersey, and the laws of the foreign jurisdiction, Georgia, do not differ, the court need not decide the choice-of-law issue. Lebegern v. Forman, 471 F.3d 424, 430 (3d Cir. 2006). Therefore, New Jersey law applies.

inferences in the light most favorable to the non-moving party. See Startzell v. City of Philadelphia, 533 F.3d 183, 192 (3d Cir. 2008).

The moving party bears the initial burden of informing the court of the basis for its motion and demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the burden is met, the burden shifts to the non-moving party to "set forth specific facts showing that there [are] . . . . genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250. The party opposing summary judgment may not "rest upon mere allegation[s] or denials of his pleading," but must set forth specific facts and present affirmative evidence demonstrating that there is a genuine issue for trial. Id. at 256-57.

Verizon asserts it is entitled to summary judgment because it is not liable under a respondeat superior theory, a negligent entrustment theory, or under a theory that Verizon had a "duty to properly oversee and control the use of its fleet vehicles and prevent the misuse of the same". Pl's Opp. Br. at 2. Each theory of liability is addressed in turn.[5]

---

[5] Plaintiff's brief indicates he is only pursuing his third theory of liability against Verizon. Pl's Opp. Br. at 16-17. Plaintiff does not dispute that vicarious liability does not apply (see Pl.'s Opp. Br. at 16) and did not brief a negligent entrustment theory. Nevertheless, since these theories are pleaded in the second amended complaint and are briefed by Verizon, the Court will consider all three theories in the exercise of caution.

Under the doctrine of respondeat superior, "an employer can be found liable for the negligence of an employee causing injuries to third parties, if, at the time of the occurrence, the employee was acting within the scope of his or her employment." Carter v. Reynolds, 175 N.J. 402, 408-09 (2003) (citing Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587 (1993)). "To establish a master's liability for the acts of his servant, a plaintiff must prove (1) that a master-servant relationship existed and (2) that the tortious act of the servant occurred within the scope of that employment." Id. "Generally, an employer is not liable for harm caused by an employee in the use of a vehicle owned by the employer when the use is not within the employee's scope of employment." Pfender v. Torres, 336 N.J. Super. 379, 393 (App. Div. 2001) (citing Gilborges v. Wallace, 78 N.J. 342, 351 (1978)). "Liability for the employer is only appropriate if the vehicle is being used by the employee 'for the purpose of advancing the employer's business or interests, as distinguished from the private affairs of the [employee].'" Id.

Here, while Verizon acknowledges that a master-servant relationship existed between Verizon and Morris (Def.'s Br. at 15), plaintiff does not dispute that Morris was acting outside the course and scope of her employment when the accident occurred. See Pl.'s Opp. Br. at 16. Thus, no facts are in dispute and the respondeat superior claim fails as a matter of law. Therefore, summary judgment is granted as to this claim.

Next, the Court addresses whether Verizon is liable under a negligent entrustment theory. In relation to the negligent entrustment of vehicles, "[t]he owner of an automobile may be liable for injury from the operation of that car placed in the hands of one he knows or ought reasonably to know is incompetent to operate it so that the owner ought reasonably to anticipate that in its operation injury will be done to others." Mead v. Wiley M. E. Church, 4 N.J. 200, 206 (1950) (citation omitted); see also Huhn v. Estate of Altieri, C.A. No. 5515-05T1, 2008 WL 834177, at *3 (N.J. Super. Ct. App. Div. Mar. 31, 2008) (same). There must be "actual knowledge or reasonable cause to believe that the operator is unqualified or incompetent." Baran v. Clouse Trucking, Inc., 225 N.J. Super. 230, 235 (App. Div. 1988).

The Court agrees with Verizon that there is no evidence in the record suggesting that Verizon knew or had reason to believe Morris was an unqualified or incompetent driver. See Def.'s Br. at 19. Plaintiff does not present any argument in their opposition brief arguing otherwise. Therefore, summary judgment is granted in favor of Verizon on this claim as well.

Last, plaintiff asserts a common law negligence claim that Verizon "had a duty to properly oversee and control the use of fleet vehicles and prevent the misuse of same by an administrative assistant such as Morris." Pl.'s Opp. Br. at 2. As will be

8

discussed, the Court finds this is not a viable theory of liability under the facts presented herein.

In order to establish a claim for negligence under New Jersey law, a plaintiff must prove: (1) duty of care; (2) a breach of that duty; (3) proximate causation; and (4) injury. Weinberg v. Dinger, 106 N.J. 469, 484 (1987). Plaintiff asks the Court to impose a duty in favor of a third party on Verizon to ensure that Verizon's employees do not use its vehicles for unauthorized purposes. In this regard, plaintiff argues Verizon negligently oversaw its fleet of vehicles. Plaintiff contends that "it was common knowledge" that Morris would use pool vehicles for personal purposes including getting to and from work and picking up lunch. See Pl.'s Counter Statement of Facts ¶¶ 12-15. In support of this contention plaintiff relies on Morris' statement that she previously used a pool vehicle to drive to Connecticut. Id. ¶ 17. Plaintiff argues that Morris was generally exempted from the rules and regulations promulgated by Verizon regarding the use of pool vehicles for personal use including filling out the necessary paperwork, obtaining authorization and recording the number of miles driven. Id. ¶ 30, 38, 39.

In response, Verizon argues that it was not negligent. Verizon points to its written work vehicle policy which all employees were required to sign before using a work vehicle which prohibited unauthorized personal use of Verizon vehicles. Def.'s Br. at 21.

9

This policy required employees to seek prior authorization to use a vehicle for personal use by filling out a form referred to as "Attachment D." Id.; see note 2, supra. Verizon further argues, with no dispute from plaintiff, that if Morris had authorization to use Verizon's vehicle for personal use, Verizon would not be liable under a respondeat superior theory. Therefore, Verizon argues, it is illogical to hold it responsible for unauthorized personal use. Id. at 21-22. Last, Verizon claims that even if a duty was breached, as a matter of law the harm to plaintiff was not foreseeable and liability should not be imposed. Id. at 22.

Although the parties argue whether or not Verizon was negligent, this issue is irrelevant to the Court's ruling. Giving plaintiff the benefit of the doubt as to the facts and inferences, as it must in this context, the Court finds that there is a question of fact whether Verizon was negligent. However, this finding is not determinative. If Verizon did not owe a duty to plaintiff then plaintiff has no cause of action against it, whether or not Verizon was negligent. As noted in Hill, 75 N.J. at 143, what the issue comes down to is whether there was a duty owed by Verizon to plaintiff. The Court finds that no such duty exists and, therefore, Verizon's motion will be granted.

In support of its contention that Verizon owed plaintiff a duty of care, plaintiff relies on Zinck v. Whelan, 120 N.J. Super. 432 (App. Div. 1972). In Zinck, the court considered whether

10

leaving a key in the ignition of an unlocked automobile was the proximate cause of the plaintiff's injuries that were suffered as a result of a car accident involving the stolen vehicle. Reversing prior case law which held that a vehicle owner did not have a duty under the circumstances, the court found that fact questions remained to be decided by the jury and that the defendant was not absolved of liability as a matter of law. Id.; see also Hill v. Yaskin, 75 N.J. 139 (1977) (imposing a duty on the owner of vehicle that injured another when the vehicle was stolen after the owner left it in a high crime area with the key inside).

Plaintiff's argument that "[t]he case before this Honorable Court is no different from that of Zinck" is misplaced. Pl.'s Opp. Br. at 11. The rationale of Zinck focused on the court's finding that a "reasonably prudent motor car operator can today justly be held to an awareness of the gravamen of the foregoing data [regarding the car theft rates and the relation between car thefts and subsequent car accidents involving the stolen vehicle]." Zinck, 120 N.J. Super. at 448. The facts of this case are materially different from Zinck and Hill. Verizon did not leave its keys in the ignition parked in a high-crime area and Morris was not an anonymous thief on the street; instead, she was a trusted employee who ordinarily had the authority to use Verizon's vehicles. As stated in Hill, "the most common test of negligence [] is whether the consequences of the alleged wrongful act were

11

reasonably to be foreseen as injurious to others coming within the range of such acts." 75 N.J. at 144. In contrast to Zinck, there is no evidence to suggest that if Verizon's vehicles were taken by an employee for personal use an accident was likely or even foreseeable. In this case, Morris, acting in violation of Verizon's work vehicle policy, took a vehicle without personal use approval and drove it 1,000 miles away. The duty imposed by Zinck and Hill does not apply under these circumstances. The vehicle Morris used without permission was not left on the street with the key inside, nor was the vehicle stolen by an anonymous thief. The mere fact that Morris was not authorized to use Verizon's vehicle did not make her accident more or less likely. This contrasts with Zinck and Hill where evidence existed for a jury to decide whether the accident at issue was foreseeable.

   Plaintiff argues that Morris frequently failed to comply with Verizon's sign-out policies and Verizon should have known that Morris regularly misappropriated vehicles. Therefore, plaintiff argues, Verizon had a duty to prevent unauthorized use. Morris testified that she often misappropriated vehicles as did other Verizon employees. Morris Dep. T61:4-15. However, Morris' supervisor Jim Blake testified that he was unaware that Morris had taken out the vehicle to attend her grandmother's funeral and thought Morris had only used the Verizon pool vehicles "less than ten times" to drop the cars off for maintenance as she was required

12

to do. Blake Dep. T11:1-6. Additionally, Morris testified that she did not inform Blake or others, including security personnel, that she previously took a vehicle to Connecticut or used company vehicles for other personal reasons such as getting lunch or commuting to and from work when her car was in the repair shop. Morris Dep. T102:17-25. In addition to not informing her superiors of her personal trips, Morris' voicemail to Blake following the accident indicates that Morris knew that driving a vehicle without authorization was not permitted and was grounds for termination. See Morris Dep. T121:24-25; T100:14-101:12. Further, if Morris' supervisors knew about the policy violations, it would seem logical that the issue would have been addressed since, at the very least, unauthorized use results in additional wear to Verizon vehicles (particularly 1,000 mile trips) and subjects Verizon to additional auto insurance liability.

Despite the parties' focus on the issue, whether or not Verizon negligently enforced its use policy is not determinative. Even assuming that Verizon negligently enforced its policy, Verizon's motion would still be granted. Under New Jersey law Verizon did not owe plaintiff a duty to enforce its personal use policy. In the absence of such a duty Verizon cannot be liable to plaintiff. In Hanks v. McFarlane, the plaintiff was injured when his car was struck by a G & G Electrical Supply van. C.A. No. 1302-08T3, 2009 WL 2454714 (N.J. Super. Ct. App. Div. Aug. 12, 2009).

13

The plaintiff appealed the summary judgment dismissal of his complaint against G & G. Id. at *1. At the time of the accident, the G & G employee "misappropriated" the vehicle, which was only to be used for business purposes (pursuant to company policy), and in the course of his "unauthorized use" permitted his cousin to drive the van. Id. The Appellate Divison upheld the trial court's decision, finding that no matter who was driving the car the use of the van was unauthorized and not within the scope of employment and, therefore, G & G was not liable. Id. at *3.

Another relevant decision is Onugha v. Moralesa, a case outside the employer-employee context. In Onugha a pedestrian was hit by an unlicensed driver who was driving a borrowed vehicle. C.A. No. 5359-05T1, 2007 WL 2376642 (N.J. Super. Ct. App. Div. Aug. 22, 2007). The plaintiff-pedestrian sued the owner of the vehicle, arguing that the owner was liable for the driver's negligence. Id. at *1. The court found that without alleging that the driver was the owner's employee (thus subjecting the owner to vicarious liability) or that the owner negligently entrusted the driver with the vehicle, the plaintiff failed to state a cause of action. Id. at *2.

It is undisputed that Morris was using her vehicle for purely personal purposes at the time of her accident. Imposition of a duty on Verizon under these circumstances would be inconsistent with New Jersey case law which does not hold an employer liable

when an employee uses a company vehicle outside the scope of his or her employment. Gilborges v. Wallace, 78 N.J. 342, 351 (1978) ("A master is not liable for harm caused by a servant in the use of an instrumentality owned by the master when such use is not within the servant's scope of employment. He is liable only if at the time of the accident 'the instrumentality is being used by the servant for the purpose of advancing the employer's business or interests, as distinguished from the private affairs of the servant.'") (citing Restatement, Agency 2d, § 238 at 526 (1958)); see also Pfender v. Torres, 336 N.J. Super. 379, 393 (App. Div. 2001) (same). Indeed, Verizon makes a compelling point that since it could not be held liable under the same facts if it authorized Morris to take its vehicle for personal use (i.e., because the use is outside the course and scope of her employment), it is illogical to hold Verizon liable because her personal use was unauthorized. See Def.'s Br. at 22. The fact that the use was unauthorized did not make Morris' accident any more or less likely or foreseeable. If plaintiff's theory is adopted, an employer could become an "insurer" any time an accident occurs when its vehicle is being used by its employee for personal use. No New Jersey case law supports this expansion of an employer's tort liability.

Even if the imposition of a duty on Verizon was appropriate, Verizon's motion would be granted because foreseeability is too attenuated. Inextricably tied to the appropriateness of the

15

imposition of a duty to avoid injuring another is the probability and foreseeability of the injury. Hill, 75 N.J. at 142-144 ("[t]he risk reasonably to be perceived defines the duty to be obeyed; it is the risk reasonably within the range of apprehension, of injury to another person, that is taken into account in determining the existence of the duty to exercise care."). In order for a harm to be foreseeable, the risk of injury to another must be "within the range of apprehension." Sander v. HR Trust Services., LLC, C.A. No. 08-1383 (GEB), 2009 WL 3055368, at *2 (D.N.J. Sept. 21, 2009) (citing Jerkins ex rel. Jerkins v. Anderson, 191 N.J. 285, 294 (2007)). "Establishment of the foreseeability of the risk of injury requires the further determination of whether considerations of fairness and policy warrant imposing a duty." Carvalho v. Toll Bros. & Developers, 143 N.J. 565, 574 (1996) (citing Carter Lincoln–Mercury, Inc., 135 N.J. 135 N.J. 182, 194-95 (1994)).

In essence, plaintiff argues that because Verizon negligently failed to enforce its work vehicle policy, Morris was able to misappropriate the Verizon vehicle in Georgia and injure someone in New Jersey. In response, Verizon argues:

> The obvious reason for the regulations concerning the securing of pool vehicles is to prevent the loss of Verizon Wireless property through theft or unauthorized use. There is no logical argument that can be made that Verizon Wireless employees driving company vehicles without authorization are more likely to negligently operate said vehicles than employees with such authorization. It is implausible to conclude that any such internal policies or

16

> procedures may fairly be interpreted as serving to protect the public from a distracted or tired driver or that failure to comply with such a policy or procedure alone may have as a foreseeable result the injury here involved.

Def.'s Br. at 23-24. Stated differently, Verizon points out that whether or not Verizon negligently enforced its work vehicle policy has no relation to Morris' negligent driving. The Court agrees. Morris, a qualified and licensed driver, could have injured another driver whether or not she was using Verizon's vehicle with prior authorization. Plaintiff does not offer a scintilla of evidence that Morris was anything other than a qualified driver. There is no evidence to indicate it was foreseeable that Morris would be involved in an accident, which is precisely why Plaintiff is not pursuing his negligent entrustment claim. Thus, it cannot be said that it was foreseeable that negligent enforcement of Verizon's work vehicle policy would result in a car accident. For these reasons, even if imposition of a duty on Verizon was appropriate (which it is not), the harm that came upon plaintiff was not foreseeable as a matter of law.

## **CONCLUSION**

Accordingly, for all the foregoing reasons, the Court grants Verizon's motion for summary judgment. The Court finds that Verizon is not liable under a respondeat superior or negligent entrustment theory. Further, Verizon is not liable to plaintiff under plaintiff's common law negligence theory. Under the present

circumstances Verizon did not owe plaintiff a duty of care to enforce its personal use policy for its vehicles. In addition, as a matter of law it was not foreseeable that if Morris took Verizon's vehicle without permission that an accident would result. An appropriate Order follows.

s/ Joel Schneider
JOEL SCHNEIDER
United States Magistrate Judge

Dated: September 17, 2014